# UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF MICHIGAN

### SOUTHERN DIVISION

THOMAS ASH
    Plaintiff,

v.

Livingston County
a public municipality,
Robert Bezotte, individually
and in his official capacity as
Sheriff for Livingston County and
Michael Murphy, individually
And in his official capacity as
Under Sheriff for Livingston County

Defendants

Jointly and severally

---

Joni M. Fixel (P56712)
Fixel Law Offices, PLLC
Attorney for Plaintiff
4084 Okemos Rd., Ste B
Okemos, MI 48864
(517) 332-3390

---

## COMPLAINT AND JURY DEMAND

NOW COMES Plaintiff, Thomas Ash ("Plaintiff"), by and through his attorney, Joni M. Fixel of Fixel Law Offices, PLLC, and for his complaint, states as follows:

## Jurisdiction and Parties

1. This is an action to enforce civil rights arising out of Plaintiff's employment relationship with the Livingston County Sheriff's Department, pursuant to the United States Constitution and the common laws of Michigan.

2. Tom Ash, ("Plaintiff") is a resident and domiciled in the Village of Pinckney in the State of Michigan.

3. Defendant Livingston County ("Defendant County") is the public body located in the State of Michigan where elected officials govern the actions of the Livingston County Sheriff's Department.

4. Defendant Livingston County Sheriff's Department is the County Sheriff Department that employed the Plaintiff and continues to employ Defendants Bezotte and Murphy.

5. Defendant Robert Bezotte ("Bezotte") is the Sheriff of Livingston County who reports to the Defendant County.

6. Defendant Michael Murphy ("Murphy") is the Under-Sheriff of Livingston County who reports to Defendant Bezotte and Defendant County.

7. The events giving rise to this cause of action occurred in Livingston County, Michigan.

8. Because claims brought under Michigan law are also so related to Plaintiffs' federal claims, (over which the Court has original jurisdiction) that they form part of the same case or controversy under Article III of the United States Constitution, the Court also has jurisdiction over Plaintiffs' Michigan common law and statutory claims pursuant to 28 U.S.C. § 1367.

9. A substantial part of the events and omissions giving rise to the claims stated herein occurred in this District, and all defendants are subject to the personal jurisdiction of this judicial district. Venue is proper in this District and Division pursuant to 28 U.S.C. § 1391.

10. Claims in this action arise in part under 42 USC § 1983.

11. The matter in controversy exceeds the sum or value of Seventy-Five Thousand and 00/100 Dollars ($75,000.00). Jurisdiction is vested in this Court by virtue of 28 U.S.C. §§ 1331.

## Background Facts

12. On or about January 21, 1996, Plaintiff became employed by the Defendant County as a Patrol Officer.

13. In or about 2003, Plaintiff was recruited by Defendant Bezotte (then Undersheriff), Sergeant Jakrzewski and Detective Domine to take a promotion to a Sergeant position. Plaintiff took the test to become a Sergeant, received the promotion and was proud to represent the Defendant County as a Sergeant.

14. As a Sergeant, Plaintiff was part of the Sergeant's union.

15. In or about early 2007, Plaintiff was called into Defendant Bezotte's office. There, Defendant Bezotte questioned the Plaintiff on whether he was having an affair with an employee of the Prosecutor's Office. Plaintiff told Defendant Bezotte that while he was good friends with the employee, he was not having an affair. At no time during this friendly discussion was the promotion to Lieutenant mentioned or discussed by either man.

16. On or about Spring 2007, the Plaintiff was approached by Defendant Bezotte

who promised that he (the Plaintiff) would receive the next promotion to Lieutenant. It was anticipated that Lieutenant Evans would retire in 2007, and the Sheriff had promised Plaintiff the next promotion. The Plaintiff told the Sheriff not to promise something he may not be able to deliver, and the Defendant Bezotte said, "I give you my word and I keep my word."

17. In or about April 2007, Plaintiff and Lieutenant Domine met with Defendant Bezotte at a local gas station. The Plaintiff and the Lieutenant were discussing the Plaintiff's resignation from the SWAT team. As a Lieutenant, the Plaintiff could not be on the SWAT team, and he had resigned in reliance of the upcoming promotion.

18. During the meeting with the Defendant Bezotte, Plaintiff was asked if he was ready to take the Lieutenant position and if he would give Defendant Bezotte his 100% loyalty. When Plaintiff responded that he would, Defendant Bezotte said, "the position is yours."

19. Upon re-entering Lieutenant Domine's car, the Lieutenant congratulated the Plaintiff on his promotion.

20. Approximately **2 weeks later**, two deputy coworkers told Plaintiff that he did not get the promotion to Lieutenant. Plaintiff felt embarrassed and humiliated to find out through subordinates, that Defendant Bezotte had not given him the job he had promised.

21. Later, in a meeting with the Defendant Bezotte and Lieutenant Jakrzewski, Plaintiff was told that the administration (all Lieutenants) had voted against him receiving the promotion.

22. In 2008, the Defendant County terminated Deputy Vorhies for being charged with two felonies. At his termination, Defendant Murphy told Vorhies to apply for Unemployment benefits and that the administration wouldn't oppose him receiving benefits.

23. In 2008, Defendant Bezotte **hired** Todd Parsons, who was then suspended from the Michigan State Police on Felony Bond. Parsons later pleaded to a misdemeanor for falsifying a police report. Yet, while on Felony Bond and suspended from another police force, Defendant Bezotte gave Parsons a gun, badge and full arrest powers.

24. On or about April 2009, Plaintiff had a meeting with Defendant Murphy. Defendant Murphy told the Plaintiff that he was being moved to dayshift because he had bad "body language." When the Plaintiff asked what body language he had that was negative, Defendant Murphy said he didn't know.

25. Plaintiff then met with the Defendant Bezotte and Lieutenant Lynch to question the change in his working hours. Defendant Bezotte said it was so the Plaintiff could rekindle his friendship with the Lieutenants. Bezotte also stated that he wasn't aware of any negative body language.

26. On or about April 2009, Plaintiff was called into numerous meetings and was told that he needed to act differently. The Plaintiff was accused of being disgruntled and told that he needed to stop coming to work "keeping his mouth shut." Plaintiff was confused and thought that the meetings had become hostile.

27. Plaintiff felt that he was being placed under increased scrutiny, and the work environment was becoming hostile. Plaintiff reported the same to Lieutenant

Domine. Lieutenant Domine, replied "Watch what you say or you'll be sorry."

28. On or about May 2009, Plaintiff met with Lieutenant Lynch where he was questioned about his report of a hostile working environment. Plaintiff reiterated he felt he was working in a hostile work environment and that he was placed under increased scrutiny. Lynch then said, "Watch what you say or you'll be sorry. The Sheriff will be pissed."

29. On or about October 14, 2009, Plaintiff attended a Sergeants' contract renewal union meeting held at the Sheriff's Department. During that meeting, Plaintiff spoke his mind about the Defendant Bezotte and stated that Defendant Bezotte didn't keep his word or his promises. Plaintiff stated, "I'm not giving up anything voluntarily. Everyone knows the Sheriff won't ask for concessions from the Lietenants because it would take dollars away from his son-in-law. He has lied to us before – two contracts ago. If he promises you anything, get it in writing!"

30. Immediately following the union meeting, the Plaintiff went on vacation for five days.

31. On or about October 19, 2009, Plaintiff returned from vacation, and was Lieutenant Lynch met him in dispatch. Lynch ordered Plaintiff into his office for a meeting. At this meeting, Plaintiff was advised that he was being moved to the jail for his work assignment. At Livingston County Sheriff's Department, Jail assignment is a disciplinary move by Defendant Bezotte for any of the employees of the Defendant County Sheriff's Department. Lynch stated the move was due to the Plaintiff speaking up against the Sheriff at his union meeting.

32. On or about October 20, 2009, Plaintiff was contacted by Sergeant Hudecek, the

union vice president. Hudecek stated that Lynch told him that Plaintiff's move wasn't from speaking out at the union meeting, but rather from a Sergeant's meeting two years prior. Then later that same day, Lynch said that the move wasn't discipline at all. Hudecek told the Plaintiff that he needed to meet with the Defendant Bezotte at 4 p.m., and that the Defendants were removing all of his supervisory and arrest powers. **(See Exhibit A)**

33. Prior to meeting with the Defendant Bezotte, Hudecek advised the Plaintiff that he could not say a word during the meeting or refuse to sign paperwork or the Sheriff would fire him immediately. Defendant Bezotte had told the union representative that if he (Hudecek) or Plaintiff ever called Defendant Bezotte a liar again, they would both be fired.

34. During the Sergeant's union meeting, both the Plaintiff and Hudecek spoke out against the Defendant Bezotte by voicing their opinions that he was a liar. This was a protected gathering and protected speech during the union meeting.

35. After the meeting on October 20, 2009, the Plaintiff was stressed and couldn't sleep for three days, so he went to his doctor. The doctor took the Plaintiff off from work on stress leave on October 23, 2009.

36. On or about October 29, 2009, Hudecek brought a disciplinary letter to the Plaintiff's home and told him if he didn't sign it, he (the Plaintiff) would be fired. The administration told the Union that they didn't have a reason, or need one, for the discipline.

37. While off from work, Plaintiff was instructed to be treated by an independent medical examiner ("IME"), which the Plaintiff did. **(See Exhibit B)**

38. In an agreement between the Plaintiff's union and the Defendant County Sheriff Department, The Department was to restore Plaintiff's full arrest powers if he passed the IME successfully. **(See Exhibit C)**

39. On or about January 4, 2010, the Plaintiff returned to work. Before returning to work, Plaintiff received a notice from Defendant Murphy outlining his new duties working at the County Jail. **(See Exhibit D)**

40. Plaintiff remained stripped of his arrest powers based on the job summary provided. The Plaintiff was not returned to his original position. Plaintiff did not sign to receive his gun, and it was not returned to the Plaintiff.

41. On or about January 27, 2010, Plaintiff was called into a taped interview with Defendant Bezotte, Lieutenant Cremonte and Sergeant Leveque, Defendant Bezotte that he was conducting an internal interview and that the Plaintiff was only to answer questions. Plaintiff thought that the interview was held according to the Garrity rules (meant for criminal immunity). Neither the Plaintiff's union representative or Defendant Bezotte provided a written Garrity statement for the Plaintiff to read and sign.

42. During the "interview" Defendant Bezotte opened two files on his desk and read from each of them. Both of these files contained the private medical records of the Plaintiff. Defendant Bezotte read aloud personal information that the Plaintiff had given the treating doctors.

43. Plaintiff **never** authorized or released Defendant Bezotte to obtain his medical records. Plaintiff never authorized or released Defendant Bezotte to read aloud from his records while other people were present. Plaintiff's records contain

information that is private protected information.

44. It was from reading this private information that the Defendant Bezotte determined that the Plaintiff had indeed had a sexual relationship with an employee of the County Prosecutor's office.

45. On or about January 29, 2010, Plaintiff was called into the Defendant Bezotte's office for a meeting to discuss his denial of his sexual relationship in 2007 and to reply to allegations of misconduct. **(Exhibit E)**

46. Plaintiff requested Defendant Murphy not have any people in this meeting that hadn't been in the meeting on January 27, 2010, so no other people would hear other personal facts from his medical files. Defendant Murphy responded by stating, "You made it an issue. Too bad, you get who we give you."

47. Defendant Murphy then called the meeting with Defendant Bezotte, Lieutenant Lynch, Lieutenant Cremonte and Sergeant Tobin. Again, Defendant Bezotte disclosed and discussed private facts from the Plaintiff's medical records.

48. Defendant Bezotte terminated Plaintiff for falsely answering questions in a promotional interview. **(See Exhibit F)**

49. Later on the same day, Lieutenant Lynch warned officers on the midnight shift that they were not to discuss the Plaintiff's termination or the officers would be fired by Defendant Bezotte.

50. Upon information and belief, Defendant Bezotte told other officers that if they were friends with the Plaintiff, or discussed the termination, they would be fired.

## Count I
## VIOLATIONS OF 42 USC § 1983
## FIRST AMENDMENT RETALIATION
## Against Defendants Bezotte and Murphy

Plaintiff incorporates by reference paragraphs 1 through 50 as if restated herein.

51. The Plaintiff has a clearly established right under the First Amendment of the Constitution of the United States not to be retaliated against for attending his union meeting. Plaintiff had the right to speak out about his distrust of the promises made by Defendant Bezotte, his other opinions about the union issues, including speaking out about past problems at issue to the union contract without fearing retribution.

52. Defendants Bezotte and Murphy, acting under the color of law, deprived the Plaintiff of his constitutional rights of the right to assemble with his fellow union members and to speak freely, by retaliating against and terminating him for what was said at the union meeting.

53. Defendants retaliated by firing the Plaintiff and depriving him of his job due to his exercising his free speech and right to assemble.

54. The Defendants could not have reasonably believed that their conduct was reasonable or within the constitutional limitations on the exercise of their authority.

55. The Defendants could not have reasonably believed that the violation of the Plaintiff's First Amendment rights is within their authority or qualified immunity.

56. The Defendants, throughout the time period at issue in this Complaint and thereafter, had a policy, pattern, or practice of retaliating against individuals who

spoke out, including at union meetings, about Defendant Bezotte or other administrators or employees of Defendant County.

57. The Defendants' unlawful retaliatory actions against Plaintiff described above were part of this unconstitutional policy, pattern, and practice.

58. Alternatively, or cumulatively, the unlawful retaliatory actions by the Defendants set forth above were carried out by the person or entity with the final decision making authority for Defendant County Sheriff's Department.

59. The Defendant's violations of Plaintiff's First Amendment rights described above are actionable under 42 USC § 1983.

60. As a result of the Defendant's violations set forth above, the Plaintiff suffered the damages above.

**WHEREFORE,** the Plaintiff requests a judgment against the Defendants that would include compensation for his past and future economic and non-economic damages, exemplary damages, against Defendants Bezotte and Murphy, costs, interest, attorneys fees under 42 USC § 1983, and any other legal relief this Court deems fair and just; and any applicable equitable relief, including an injunction against any prior restraints upon protected First Amendment Free Speech and Right to Assemble.

### Count II
### Municipal Liability in Violation of 42 USC § 1983
### Against Defendant County

Plaintiff incorporates by reference paragraphs 1 through 60 as if restated herein.

61. Defendant County had a policy allowing Defendant Bezotte or any elected Sheriff the ability to govern and make the decisions on hiring and firing.

62. Defendant Bezotte was given final policy making authority on the review and

11

discipline of the local sheriff deputies and staff.

63. Defendant Bezotte has a custom and practice to discipline based on discriminatory reasons, including, firing employees for exercising their rights to assemble and free speech.

64. Defendant County has had persistent and continual complaints about the hiring and firing practices of Defendant Bezotte but has done nothing to correct the illegal activities.

65. Defendant County has remained indifferent to the training of Defendant Bezotte and his activities.

66. Defendant County has remained deliberately indifferent to the supervision of Defendant Bezotte, despite the repeated complaints of his discriminatory and illegal employment processes.

67. Plaintiff has been harmed by Defendant County's deliberate indifference to the activities of Defendant Bezotte.

**WHEREFORE,** the Plaintiff requests a judgment against the Defendant County that would include compensation for his past and future economic and non-economic damages, exemplary damages, costs, interest, attorneys fees under 42 USC § 1983, and any other legal relief this Court deems fair and just; and any applicable equitable relief, including an injunction against any prior restraints upon protected First Amendment Free Speech and Right to Assemble.

## Count III
## Invasion of Privacy – Intrusion into Seclusion and Disclosure of Private Facts
## Against Defendants Bezotte and Murphy

Plaintiff incorporates by reference paragraphs 1 through 67 as if restated herein.

68. Plaintiff had the right to have his private medical records remain private.

69. Defendant Bezotte invaded the Plaintiff's privacy by obtaining his private medical records and openly reading from those records to parties who had no right or interest in the information contained within the medical records.

70. Disclosure of the private medical records was objectionable to the Plaintiff and would be objectionable to a reasonable person.

71. Defendants Bezotte and Murphy disclosed embarrassing private facts of the Plaintiff to others in a meeting.

72. Defendant Bezotte knew or should have known that he did not have authority to disclose the Plaintiff's private facts to others.

73. Plaintiff specifically asked Defendant Murphy to limit further disclosure of his private facts, but was told by Defendant Murphy that it was the Plaintiff's fault the information was being disclosed.

74. The disclosure of private facts from private medical records would be highly offensive to a reasonable person.

75. The disclosure of the Plaintiff's private facts from his private medical records is of no legitimate concern to the public or other employees at the Livingston County Sheriff's Department.

**WHEREFORE,** the Plaintiff requests a judgment against the Defendants Bezotte and Murphy that would include compensation for his lost wages, embarrassment, mental distress, shame and humiliation.

## Count IV
## Breach of Implied Contract
## Against Defendants Bezotte

Plaintiff incorporates by reference paragraphs 1 through 75 as if restated herein.

76. Defendant Bezotte repeatedly promised the Plaintiff a promotion to the next open Lieutenant position.

77. Plaintiff continually assured Defendant Bezotte that he would accept the opening. Plaintiff relied on Defendant Bezotte's promises by resigning from the SWAT team.

78. Defendant Bezotte breached the implied contract by refusing to promote the Plaintiff.

79. Plaintiff lost over $12,000 per year plus benefits that he should have received by being promoted to the Lieutenant position.

**WHEREFORE,** the Plaintiff requests a judgment against the Defendant Bezotte that would include compensation for his lost wages, benefits and exemplary damages for the Breach of Contract.

## Count V
## Tortious Interference with Business
## Expectancies – all Defendants

Plaintiff incorporates by reference paragraphs 1 through 79 as if restated herein.

80. Defendants had a duty not to interfere with the Plaintiff's ability to earn a living as a Police Officer.

81. Defendants breached that duty by firing the Plaintiff based on his free speech and information from his medical files.

82. Plaintiff was damaged by the termination.

83. Defendants denied the Plaintiff's unemployment benefits when they had provided the same benefits to other former employees who were convicted of a felony or charged with felonies than convicted of one or more misdemeanors.

84. Defendants continue to interfere with the Plaintiff's ability to collect benefits and to be employed.

85. Defendants are jointly, and severally or alternatively liable to Plaintiff for all of his injuries and damages.

**WHEREFORE,** the Plaintiff requests a judgment against the Defendants that would include compensation for his lost wages, benefits and exemplary damages for the Tortious Interference with Business Expectancies.

### Count VI
### Gender Discrimination in Violation of Michigan Elliott-Larsen Civil Rights Act MCL 37.2102 et seq
### Defendants County and Bezotte

Plaintiff incorporates by reference paragraphs 1 through 85 as if restated herein.

86. At all times relevant hereto Plaintiff was an employee of Defendant County.

87. At all times relevant to the allegations in this Complaint, Defendant County had employees in the State of Michigan and employed more than 20 people.

88. Plaintiff was subjected to a termination based on an alleged interview for a promotion and his answer to questions about who he chose to have sex with.

89. Upon information and belief, other similarly situated female officers were not

asked who they had sex with as a basis to qualify or disqualify for a promotion.

90. Plaintiff's gender has been a determining factor in the discipline he received.

91. Plaintiffs gender was a determining factor in Defendants Bezotte and County's decision to recommend terminating him for not disclosing who he had allegedly had sexual relations.

92. Similarly situated female employees were not disciplined or fired for who they allegedly had sexual relations with outside the workplace.

**WHEREFORE,** the Plaintiff requests a judgment against the Defendants as a direct and proximate result of Defendants' wrongful acts and omissions Plaintiff has suffered lost wages, loss of seniority and benefits, mental anguish, physical and emotional distress, humiliation and embarrassment, and loss of professional reputation.

### Count VII
### Violation of Plaintiff's Fundamental Right to Privacy, In Violation of 42 USC § 1983 Against Defendant Bezotte

Plaintiff incorporates by reference paragraphs 1 through 92 as if restated herein.

93. Plaintiff had a fundamental right to privacy with respect to his choice of romantic partners which has been articulated and protected by a long line of precedent from the United States Supreme Court.

94. Defendant Bezotte violated that right to privacy by demanding to know if Plaintiff had been having a romantic affair with an employee of the prosecutor's office.

95. Plaintiff believed the conversation to be friendly in nature and not related to a promotion or interview. However, Defendant Bezotte believed the conversation

to be in pursuit of his government function, evaluating Plaintiff for promotion. He proved this to be true by terminating Plaintiff for "false statement during a promotion interview" based on Plaintiff's gentlemanly averment to the question that 'they were only good friends.'

96. Defendant Bezotte cannot articulate a legitimate government interest in demanding disclosure of the affair which would justify the intrusion on Plaintiff's fundamental right.

97. Defendant County had received numerous complaints about Defendant Bezotte's deficiencies in the treatment of his personnel and, thus, is liable for his violations of Plaintiff's rights pursuant to relevant 1983 jurisprudence.

**WHEREFORE,** the Plaintiff requests a judgment against Defendant Bezotte as an individual, and Defendant County as his superior, that would include compensation for his past and future economic and non-economic damages, exemplary damages, costs, interest, attorneys fees under 42 USC § 1983, and any other legal relief this Court deems fair and just.

## VERIFICATION

I, Thomas Ash, have read and made this verified complaint and attest that those facts stated of my own knowledge are true and those matters stated of which I have been informed I believe to be true after reasonable inquiry.

Dated: 5-10-10

/s/ _____
**Thomas Ash**

Respectfully submitted,

Dated: May 10, 2010

*/s/ Joni M. Fixel*
Joni M. Fixel (P56712)
Attorney for the Plaintiff
4084 Okemos Rd, Ste B
Okemos, Michigan  48864
Telephone:(517) 332-3390
jfixel@fixellawoffices.com

**PLAINTIFF DEMANDS A JURY.**

Dated: May 10, 2010

Respectfully submitted,

*/s/ Joni M. Fixel*
Joni M. Fixel (P56712)
Attorney for the Plaintiff
4084 Okemos Rd, Ste B
Okemos, Michigan  48864
Telephone:(517) 332-3390
jfixel@fixellawoffices.com